IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Autotel, | ) | No. CV 05-328-TUC-JMR (HCE) |
| | ) | |
| Plaintiff, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Citizens Utilities Rural Co., Inc.; et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Autotel has filed the instant action against the following Defendants: Citizens Utilities Rural Company, Inc., Citizens Telecommunications Company of the White Mountains, and Navajo Communications Company, Inc., (hereinafter collectively referred to as "the Citizens Defendants"); the Arizona Corporation Commission (hereinafter referred to as "Defendant ACC"); Marc Spitzer, William A. Mundell, Jeff Hatch-Miller, Mike Gleason, and Kristin K. Mayes (hereinafter collectively referred to as "Defendant Commissioners").  Pending before the Court are: (1) the Citizens Defendants' Motion to Dismiss; and (2) Defendant ACC and Defendant Commissioners' Motion to Dismiss. Additionally, the Citizen Defendants have joined the Motion to Dismiss filed on behalf of Defendant ACC and Defendant Commissioners "[t]o the extent" that such Motion "bears on any claim against" the Citizen Defendants.  (The Citizens Defendants' Motion to Dismiss, p. 5 n.3)

Upon review of the briefs, the Court has determined that oral argument is not required to resolve the pending motions. For the following reasons, the Magistrate Judge recommends that the District Court grant both motions and dismiss this action for lack of subject matter jurisdiction.

## I.  BACKGROUND

### A.  Introduction

Plaintiff, Autotel, filed the instant action alleging violations of the Telecommunications Act of 1996, codified at 47 U.S.C. § 251, *et seq.* (hereinafter referred to as "the TCA" or " the Act"), and the Civil Rights Act, codified at 42 U.S.C. § 1983 (hereinafter referred to as "section 1983"). Plaintiff, a licensed Commercial Mobile Radio Service provider, is a "telecommunications carrier" and a "requesting carrier" under the TCA. (Complaint, p. 2)  Plaintiff's claims arise from its efforts to offer wireless telephone services in Arizona in competition with the Citizens Defendants who already provide telephone and other communications services in the area.  (Complaint, p.2) As discussed *infra* at p.3, the TCA requires incumbent local exchange carriers, such as the Citizens Defendants, and new entrants into the market, such as Plaintiff, to enter into interconnection agreements regarding, among other things, the sharing of existing networks.

Defendant ACC, which is comprised of the Defendant Commissioners, has regulatory jurisdiction with respect to intrastate operations of telecommunications carriers.  (Id. at p. 3) Under the TCA, the Defendant ACC is a designated "State Commission" which has jurisdiction to, *inter alia,* approve and enforce interconnection agreements between new entrants and  incumbent local exchange carriers.

Plaintiff alleges that:  (1) Defendant ACC violated the authority delegated to it under sections 251 and 252 of the TCA (first cause of action); (2) the Citizens Defendants failed to negotiate an interconnection agreement in good faith as required by sections 251(c) and 252 of the TCA (second cause of action); (3) Defendant ACC and Defendant Commissioners violated  Plaintiff's constitutional right to due process and equal protection (third and fourth

causes of action).   Plaintiff's third and fourth causes of action are filed pursuant to section 1983.

        B.  The Telecommunications Act of 1996

        The TCA  is "designed to foster competition in local telephone markets.  Toward that end, the Act imposed various obligations on incumbent local-exchange carriers..., including a duty to share their networks with competitors." *Verizon Maryland Inc. v. Public Serv. Comm'n. of Maryland,* 535 U.S. 635, 638 (2002) (citing 47 U.S.C. § 251(c)).  Section 251 of the  Telecommunications Act requires that incumbent carriers, such as the Citizens Defendants, enter into interconnection agreements with new entrants into the market, such as Plaintiff, regarding *inter alia,* network sharing, and applicable terms, conditions, and rates of same.   *See* 47 U.S.C. §§ 251.

        Section 252 governs the negotiation, mediation, arbitration, and approval of interconnection agreements between incumbent carriers and new entrants.  In Arizona, if negotiations fail, the parties must submit a petition for arbitration with the Defendant ACC, which is comprised of Defendant Commissioners.[1] 47 U.S.C. § 252(b)(1).  The parties must engage in good faith negotiation regarding the terms and conditions of the interconnection agreements. 47 U.S.C.§§ 251(c)(1), 252(c)(5).  Additionally, all agreements, whether arrived at by negotiation or arbitration, are subject to review by Defendant ACC.  47 U.S.C. § 252(e)(1).  If Defendant ACC does not take action on an arbitrated agreement within the statutorily prescribed time period, the   agreement is deemed approved.  47 U.S.C. § 252(e)(4).  Further, if the ACC fails to perform its duties under the statute, the Federal Communications Commission shall preempt the state agency's jurisdiction and shall assume the responsibilities of the state commission.  47 U.S.C. §  252(e)(5).  Finally, section

---

[1]The Telecommunications Act delegates the responsibility for conducting arbitration to "State Commissions." The parties agree that Defendant ACC herein is a "State Commission" as that term is defined by the Telecommunications Act.

252(e)(6) provides for federal district court review of whether the approved interconnection agreement "meets the requirements of section 251."  47 U.S.C. §252(e)(6).

C.  The Autotel-Citizens arbitration

Plaintiff alleges that in May 2002, it commenced negotiations to enter an interconnection agreement with the Citizens Defendants pursuant to the TCA.  (Complaint, p. 6) "Negotiations resolved some, but not all, of the outstanding issues between the parties and on March 27, 2003, Autotel filed a Petition for Arbitration with Defendant ACC, pursuant to section 252(b).  In its petition, Autotel identified four issues for arbitration.  In its response, [the Citizens Defendants] asked the ACC to impose the Citizens [sic] generic interconnection agreement and moved to dismiss the petition."  (Complaint, pp. 6-7) On June 7, 2004, the matter came on for hearing before the Commission Administrative Law Judge Jane Rodda.  (The Citizens Defendants' Motion, Ex. A)   On October 5, 2004, the Defendant ACC issued its "Order and Opinion" resolving the disputes and  requiring Plaintiff and the Citizens Defendants to "prepare and sign an interconnection agreement incorporating the terms of the Commission's esolution [sic]" as discussed in the body of the Order and Opinion.  (Id. at p.17; *see also* Complaint, p.7)   The ACC also ordered "that the signed interconnection agreement shall be submitted to he [sic] Commission for its review within thirty days of the date of this Decision."  (The Citizens Defendants' Motion, Ex. A, p. 17) The Decision was "effective immediately."  (Id.)  Plaintiff characterizes the October 5, 2004 decision as "...ordering Citizens' generic interconnection agreement with a new limit of liability section."  (Complaint, p. 7)

Plaintiff does not allege in its Complaint filed herein that it prepared, signed or submitted an interconnection agreement for the ACC's approval pursuant to the October 2004 Order.

"Pursuant to the Commission's Opinion and Order, [the] Citizens [Defendants] prepared the interconnection agreement incorporating the terms and conditions from the Commission's Order and forwarded the agreement to Autotel for signature on October 21,

2004.  Autotel, however, refused to execute the agreement as modified by the Commission's Order."  (The Citizen Defendants Motion, p. 4) Consequently, on January 31, 2005, the Citizens Defendants notified the Commission that "Autotel has declined to execute the arbitrated interconnection agreement incorporating the resolutions from the Commission's October 5, 2004 Order.  Moreover, Autotel has raised additional issues it would like to address in the arbitrated agreement.  Citizens has been unsuccessful in resolving these issues with Autotel and consequently, hereby notifies the Commission that it appears unlikely that Autotel will execute the arbitrated interconnection agreement as required by the Commission's Order."  (The Citizens Defendants' Motion, Ex. C) On January 31, 2005, the Citizens Defendants also submitted the arbitrated agreement executed by them but not Plaintiff.  (The Citizens Defendants' Motion, p.4)

Plaintiff did not request that the Commission take any further action regarding the impasse between the parties.  Instead, on May 5, 2005, Plaintiff filed the instant law suit.  As of September 19, 2005, the ACC's electronic docket reflected the status of the arbitration proceeding as: "Compliance Due."  (The Citizen Defendants' Motion, p. 4 & Ex. D)

D.  Defendants' Motions to Dismiss

All Defendants seek dismissal of Plaintiff's Complaint pursuant to Rule12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  According to Defendants, the Court lacks jurisdiction over all claims alleged herein because: (1) Plaintiff failed to raise before the ACC its claim that the Citizens Defendants failed to negotiate in good faith;[2] and (2) the ACC has not issued a final determination regarding the interconnection agreement as no such agreement has been submitted for approval.

---

[2]Plaintiff argues that Defendant ACC and Defendant Commissioners lack standing to seek dismissal of its claim against the Citizens Defendants.  Because, as discussed *infra* at pp. 7-19, the Citizens Defendants' Motion should be granted, the Court need not address whether the other Defendants have standing to move for dismissal of that claim as well.

The Citizens Defendants alternatively argue that Plaintiff's second cause of action–the only claim asserted against the Citizens Defendants–should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Defendant ACC and Defendant Commissioners alternatively argue that Plaintiffs third and fourth causes of action should be dismissed because they are entitled to immunity and because Plaintiff fails to state a claim.

## II.  STANDARD

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is appropriate when the court lacks subject matter jurisdiction over a claim.  Fed. R. Civ. 12(b)(1). Subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.  Because federal courts are courts of limited jurisdiction, it is presumed that a cause lies outside the jurisdiction of federal courts unless proven otherwise.  *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).  The plaintiff bears the burden of establishing that jurisdiction exists.  *Tosco Corp. v. Communities for a Better Environment,* 236 F.3d 495, 499 (9th Cir. 2001);  *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

"'A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may'" attack the existence of subject matter jurisdiction as a matter of fact.  *National Union Fire Insur. Co. v. ESI Ergonomic Solutions, LLC.,* 342 F.Supp.2d 853 (D. Ariz. 2004) *(quoting Thornhill Publishing Co.,* 594 F.2d at 733). "When a motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Id. (citing Federation of African Amer. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996)). Where the jurisdictional issue is separable from the merits of the case, the court may consider the evidence presented with

respect to the jurisdictional issue, resolving factual disputes if necessary. *Thornhill,* 594 F.2d at 733.  "When the motion is a factual attack on subject matter jurisdiction, a defendant may 'rely on affidavits or any other evidence properly before the Court.'" *National Union Fire Insur. Co*., 342 F.Supp.2d at 861  (*citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). *See also White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (the court may also consider matters of public record).  In the instance of a factual challenge, no presumption of truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims. *Thornhill,* 594 F.2d at 733.

When a motion to dismiss is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first because the other grounds will become moot if the court lacks subject matter jurisdiction.  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure,* §1350 (2004 ed.)

## III.  DISCUSSION

### A.  Plaintiff's claims filed pursuant to the TCA

### 1.  Argument

All Defendants argue that the Court lacks subject matter jurisdiction to consider Plaintiff's claims that Defendants violated the TCA.[3]  Defendants argue that the Court's sole source of jurisdiction is section 252(e)(6)[4] of the TCA and under that section, jurisdiction does not vest with the Court "until the Commission has approved or rejected an executed interconnection agreement between the parties."  (Defendant ACC's Motion, p.4; *see also* Citizens Defendants' Motion, pp. 5-9).  According to Defendants, jurisdiction over Plaintiff's first and second causes of action is lacking because Plaintiff failed to raise before the ACC

---

[3]Plaintiff's first cause of action alleges violations of the TCA by Defendant ACC. Plaintiff's second cause of action alleges violations of the TCA by the Citizens Defendants.

[4]Section 252(e)(6) is set out in pertinent part *infra* at p.9.

the issue regarding the Citizens Defendants' alleged violation of the duty to negotiate in good faith and because Plaintiff failed to submit an executed agreement for approval by the ACC.

Plaintiff argues that the Court need not consider whether jurisdiction exists under the TCA, because the Court has jurisdiction: (1) over the first and second causes of action pursuant to 28 U.S.C. § 1331; and (2) over the second cause of action pursuant to 47 U.S.C. §§ 206, 207 of the 1934 Communications Act.[5]  Plaintiff also asserts that it is not required to exhaust administrative remedies under the TCA and, thus, no final determination from the ACC is necessary for this Court to consider Plaintiff's claims under the TCA.

It is undisputed that neither Plaintiff nor the Citizens Defendants submitted an interconnection agreement executed by all such parties for approval or rejection by Defendant ACC;  Defendant ACC has not approved or rejected an interconnection agreement in this matter;  Plaintiff did not submit to the ACC its claims that the Citizens Defendants violated the duty to negotiate in good faith imposed by section 251(c).

        2.  Jurisdiction pursuant to 28 U.S.C. § 1331 is lacking

It is well-settled that "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Kokkonen*, 511 U.S. at 377.  *See also Thunder Basin Coal, Co. v. Reich,* 510 U.S. 200 (1994) (district court is prohibited from exercising subject matter jurisdiction when it is determined that Congress intended to preclude review).  The issue herein is whether this Court's jurisdiction is governed solely by the TCA as Defendants urge, or whether, as Plaintiff argues, the Court may exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Resolution of this issue requires consideration of whether Congress intended to delay judicial review of actions filed pursuant to the TCA until after the state commission approved or rejected a final interconnection agreement.

_____

[5]The statutes cited by Plaintiff are set out *infra* at p.15 nn.6 & 7.

In cases that involve delayed judicial review of agency actions, such as the case herein, the court "shall find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'" *Thunder Basin Coal, Co.*, 501 U.S. at 207 (*quoting Block v. Community Nutrition Institute,* 467 U.S. 340, 351 (1984)). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, it's legislative history,...and whether the claims can be afforded meaningful review." *Id.* (citations omitted). The United States Supreme Court has held that an act's "comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process establishes a fairly discernible intent to preclude" initial judicial review. *Id.* at 216 (citation omitted).

The express language of section 252(e) requires, in pertinent part that:

(1) Any interconnection agreement adopted by negotiation or arbitration *shall be submitted* for approval to the State commission. A State commission to which an agreement is submitted *shall approve or reject* the agreement, with written findings as to any deficiencies.

\*\*\*

(6) ...In any case in which a State commission *makes a determination* under this section, *any party aggrieved by such determination* may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

47 U.S.C. §§ 252(e)(1), (6) (emphasis added).

Courts considering the issue are in agreement that the state commission "determination" referenced in section 252(e)(6) "means the decision or order of a state commission approving or rejecting a final, executed interconnection agreement between the parties." *Global Naps, Inc. v. Bell Atlantic-New Jersey,* 287 F.Supp.2d 532, 540 n.11 (D.N.J. 2003) (*citing GTE North v. Glazer,* 989 F.Supp. 922, 925 (N.D. Ohio, 1997); *GTE North v. McCarty,* 978 F.Supp. 827, 834 (N.D.Ind. 1997); *GTE Northwest v. Hamilton,* 971 F.Supp. 1350, 1353-1354 (D. Or. 1997); *GTE South v. Morrison,* 957 F.Supp. 800, 804 (E.D. Va 1997)). The Ninth Circuit has also recognized that "[a]fter a state commission approves an

arbitrated agreement, any 'aggrieved' party to the agreement may bring an action in district court 'to determine whether the agreement...meets the requirements' of the Act.  *See* [47 U.S.C.] at section 252(e)(6).  Once the terms are set, either by agreement or by arbitration, and the state approves the agreement, it becomes a binding contract." *Pacific Bell v. Pac-West Telecomm, Inc.,* 325 F.3d 1114, 1120 (9th Cir. 2003) (reviewing state commission's general order that affected previously approved interconnection agreements).  The fact the TCA expressly limits federal court review to consideration of whether the interconnection agreement complies with section 251 indicates Congress' clear intent that jurisdiction does not vest with the court until *after* an interconnection agreement has been submitted by the parties *and* the state commission has rendered a determination regarding such agreement.

The structure of the TCA also compels the conclusion that only federal court review of a final interconnection agreement is permitted.  The TCA sets forth a precise procedure, including a specific time schedule, for the implementation of its terms. 47 U.S.C. §§ 252(a)-(e).  These "procedures...are clearly designed to preserve the authority of state commissions...." *AT&T Communications of Ohio, Inc. v. Ohio Bell. Tel. Co.,* 29 F.Supp.2d 855, 856 (S.D. Ohio 1998).  The TCA provides that the parties may engage in voluntary negotiations during the first 134 days.  47 U.S.C. §§ 252(a), (b).  If voluntary negotiation fails, the TCA requires the parties to turn to the state commission for assistance and the state commission must either "participate...and mediate any differences" or, during the period from the 135th to the 160th day, arbitrate the open issues.  47 U.S.C. §§252(a),(b).  The arbitration must be concluded by the state commission within nine months of the first request for an interconnection agreement.  47 U.S.C. §252(b)(4)(c).  The TCA requires the parties to negotiate in good faith and to cooperate with the state commission in carrying out its function as an arbitrator. 47 U.S.C. §§ 251(c)(1), 252(c)(5).  The TCA also requires the parties to submit any negotiated or arbitrated agreement to the state commission for approval.  47 U.S.C. § 252(e)(1).  The TCA vests the state commission with authority to approve or reject the agreement; requires the state commission to provide written findings as to any

deficiencies; sets out specific grounds upon which the state commission may reject an agreement; and specifies the time by which the state commission must act to approve or reject the agreement. 47 U.S.C. §§252(e)(2),(4). The TCA then provides for judicial review of the interconnection agreement when "any party aggrieved" by a state commission's "determination" rendered "under this section" files such action. 47 U.S.C. § 252(e)(6). "The approval or rejection of an interconnection agreement is the final step to its effectiveness, unless one of the parties appeals to the federal judiciary. That implies that Congress wants the parties to proceed through the entire statutory process before federal court intervention." *GTE North,* 978 F.Supp. at 834.

The legislative history reflects that Congress intended to "channel[]...and streamline[]...", *Thunder Basin Coal Co.,* 510 U.S. at 216, the process to promote competition in the telecommunications industry and enforcement of the TCA. The TCA "was intended to increase competition in all telecommunications markets, including local telephone exchange markets...With regard to local markets, Congress' goal was to replace 'the long-standing regime of state-sanctioned monopolies' with a competitive market structure." *AT&T Communications Sys. v. Pacific Bell,* 203 F.3d 1183, 1184 (9th Cir. 2000) (citations omitted). The legislative history explains that the TCA will "provide for a pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition...." H.R. Conf. Rep. No. 104-458 at 113 (1996) *reprinted in* 1996 U.S.C.C.A.N. 10, 124. To this end, section 251 "describes the various ways [incumbent local-exchange carriers] are required to share their networks with competitors in order to promote market entry by [new entrants]...and sets out detailed rules implementing the general duty of telecommunications carriers to interconnect with each other's facilities and equipment." *Global Naps,* 287 F.Supp.2d at 535. Additionally, the Ninth Circuit has recognized that "[t]he strict timelines contained in the [TCA] indicate Congress' desire to open up local exchange markets to

competition without undue delay." *AT&T Communications Sys.,* 203 F.3d at 1186. *See also GTE North*, 989 F.Supp. at 924 ("...Congress' clear intent was to facilitate the opening of the local telephone service markets as quickly as possible.")

Further, the TCA's "structure and purpose would be thwarted if...[judicial] review commenced before the completion of [the state commission's] proceedings." *GTE South*, 957 F.Supp. at 805 (judicial review prior to final agreement would frustrate the TCA's structure and purpose because the state commission "cannot finally rule on issues addressed by its orders until it has seen how those issues function, both economically and pragmatically, in the context of a complete interconnection agreement.") *See, GTE Northwest, Inc.* 971 F.Supp. at 1354 (recognizing that "the contracting parties may misunderstand the [commission's] Order and craft improper contractual provisions as a result" necessitating further direction from the commission); *GTE North,* 978 F.Supp. at 835-836 (recognizing "probability that new issues might arise between the time an arbitration order is issued and the time an agreement is ruled upon, which would necessitate another round of review before this court.");*GTE Northwest, Inc. v. Nelson,* 969 F.Supp. 654. 656 (W.D.Wash. 1997) ("Considering the [TCA] in its entirety, it is clear that Congress intended to defer court review until an agreement has become final...Review of determinations that have not been made part of a final agreement would only delay and complicate the tightly regulated process established by the [TCA].") *See also, AT&T Communications*, 203 F.3d at 1185 (Ninth Circuit indicated that the arbitrated interconnection agreement was modified subsequent to arbitration where the parties submitted the arbitrated agreement for the commission's approval and the commission "issued a decision approving the arbitrated agreement, with certain modifications...")

Additionally, the issues that may arise during the process, including mediation, arbitration, approval of the interconnection agreement, and consideration whether the parties negotiated "in good faith in the presence, or with the assistance of the State commission," fall within the expertise of the state commission, given that the ACC "has regulatory

jurisdiction with respect to intrastate operations of carriers" under the laws of Arizona.  47 U.S.C. §§ 153, 251(c)(1), 252(c)(5).  *See Thunder Basin Coal, Co.,* 510 U.S. at 214 (finding that regulatory commission could provide meaningful review where the agency's expertise could be brought to bear on the issues presented).  If the state commission "fails to act to carry out its responsibilities under this section in any proceeding or other matter under" the TCA, then the Federal Communications Commission shall "issue an order preempting the State commission's jurisdiction of that proceeding or matter ...within 90 days after being notified...of such failure, and shall assume the responsibility of the State commission under this section with respect to the proceeding or matter and act for the State commission."  47 U.S.C. § 252(e)(5).  Moreover, after an interconnection agreement is approved, the party aggrieved by such determination can seek federal court review concerning whether the agreement complies with the Act.  47 U.S.C. § 252(e)(6).

"Finally, other courts...have held the language of section 252(e)(6) to mean that federal district courts do not have jurisdiction under the Act until a final agreement has been submitted to and ruled upon by a state commission."  *GTE North,* 978 F.Supp. at 836 (citing numerous federal district court cases).  *See Global-Naps,* 287 F.Supp.2d at 541 (same); *GTE Northwest,* 969 F.Supp. 654 (same); Defendant's Motion, Ex. E & Ex. F (containing decisions from district courts in Oregon and Utah holding same with regard to Plaintiff and Plaintiff's affiliate).  *See also GTE North, Inc. v. Strand,* 209 F.3d 909, 915 (6th Cir. 2000) (although section 252(e)(6) did not apply to that action, the court stated that section 252(e)(6) "prohibits federal review of interlocutory orders entered in the course of" TCA proceedings.)

Accordingly, the TCA's "administrative structure was intended to preclude district court jurisdiction," *Thunder Basin Coal, Co.,* 510 U.S. at 218, until a final interconnection agreement has been submitted to and ruled on by a state commission in accordance with the section 252.  Plaintiff's argument that the Court nonetheless has jurisdiction pursuant to 28 U.S.C. § 1331 does not alter this conclusion because Plaintiff relies on inapposite authority to support its position.

Plaintiff relies upon a United States Supreme Court decision holding that the district court had jurisdiction under section 1331 to review a state commission's determination interpreting and enforcing "an interconnection agreement that the commission" had previously approved. *Verizon Maryland, Inc. v. Public Serv. Commission of Maryland,* 535 U.S. 635, 641 (2002) Thus, according to Plaintiff, section 1331 confers jurisdiction "over violations of the Telecommunications Act, outside of and independent from the jurisdiction conferred by the Act regarding review of Commission determinations." (Plaintiff's Response to the Citizens Defendants' Motion, p.6) However, the *Verizon* court pointed out that the determination at issue involved "neither the approval nor disapproval" of an interconnection agreement. *Id.* The Court did not address whether the district court would have jurisdiction over claims arising during the negotiation process for interconnection agreements that were not first presented to the commission. *See Global-Naps,* 287 F.Supp.2d 532 (decided after *Verizon* and holding that claim that incumbent carrier failed to negotiate in good faith during negotiation of interconnection agreement must first be presented to state commission before federal court action may be filed); *Contact Communications v. Qwest Corp.* 246 F.Supp.2d 1184, 1189 (D.Wyo. 2003) (holding that "absent a prior determination of the issue by the state [commission], no federal jurisdiction exists and distinguishing *Verizon* on the basis that the Supreme Court "did not hold that federal district courts have jurisdiction to decide such a question in the first instance prior to a consideration and decision by either a state commission or the FCC.")  Nor did the Court address whether the district court would have jurisdiction where no binding interconnection agreement had been submitted for the commission's approval in the first place. *Verizon* does not support the proposition that jurisdiction exists pursuant to 28 U.S.C. § 1331 on the facts of this case where no final interconnection agreement has been approved or rejected.

3.  Jurisdiction pursuant to sections 206 and 207 of the 1934 Communications Act is
    lacking

Plaintiff also argues that its claim that the Citizens Defendants failed to negotiate in good faith is "quite different from the first claim for relief.  It does not ask this court to review a decision by the ACC.  Rather it asks this court to enforce an independent provision of the Telecommunications Act." (Plaintiff's Response to the Citizens Defendants' Motion, p.13) Plaintiff contends that the Court has jurisdiction over the claim pursuant to 47 U.S.C. §§ 206[6] and 207[7] of the TCA which together "provide rights of action for violations of the Communications Act of 1934.  Section 206 creates a cause of action and section 207 grants jurisdiction to federal district courts over such actions." *Global-Naps,* 287 F.Supp.2d at 542 n.14.  Specifically, sections 206 and 207 were enacted to provide a cause of action for consumers who were injured by errors in delivery of telegraphs and similar acts or omissions. *Id.* at 544.  Sections 206 and 207 have been invoked successfully by parties who were not

---

[6]Section 206 provides:

In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206.

[7]Section 207 provides:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

subject to the negotiation and approval process set out at sections 251 and 252 of the TCA. *See Id.* (citations omitted)

"In contrast, the [TCA] of 1996 created a comprehensive statutory scheme designed to promote competition in the telecommunications industry by expediting the formation of interconnection agreements between" incumbent local-exchange carriers and new entrants into the market. *Id.*   The duty to negotiate interconnection agreements in good faith is imposed by the same statutory scheme that vests the state commission with authority in the first instance over the negotiation, arbitration and approval of interconnection agreements. Nothing in the TCA evidences Congress' intent to create an exception from section 252(e)(6) for a violation of the duty to negotiate in good faith.   The Citizens Defendants aptly point out that "[t]he fact that Congress enacted a specific jurisdictional limit on federal district courts in Section 252(e)(6) and as part of the same section in which it grants state commissions initial authority over the negotiation, arbitration, and approval of interconnection agreements strongly evidences an intent that district court jurisdiction be limited to that set forth in section 252(e)(6)." (The Citizens Defendants' Reply, p. 11; *see also* the Citizens Defendants' Ex. D, p.18)

Permitting a party to file a federal court action alleging violations of the TCA pursuant to sections 206 and 207, "would jeopardize section 252's system of review and statutory scheme intended to make state commissions the initial decisionmakers regarding interconnection agreements." *Global-Naps,* 287 F.Supp.2d at 545. This is especially so where the gravamen of the instant Plaintiff's claims arise from the process regarding the formation of an interconnection agreement given that all aspects of this negotiation and arbitration, including the duty to act in good faith during this process, "are squarely within the scope of matters committed to state regulators." *Id.* at 541."Although sections 251 and 252 may be considered part of the 'entire' Communications Act, it is clear that these sections were intended to address issues addressing the negotiation, approval, and enforcement of interconnection agreements.  As part of the scheme, section 252(e)(6) governs jurisdiction

where disputes over the negotiation, approval, and enforcement of interconnection agreements are concerned, and Congress intended that such disputes be addressed by state commissions in the first instance." *Id.* at 545 (citation and footnote omitted).

In light of the analysis under *Thunder Basin Coal, Co.,* set at *supra.* at pp. 8-14, and the "distinct role sections 206 and 207 have *vis-a-vis* section 252(e)(6)," the Court herein concludes that sections 206 and 207 do not confer district courts with jurisdiction over violations of the TCA. *Global Naps,* 287 F.Supp.2d at 544-545 (concluding that "sections 206 and 207 do not vest district courts with jurisdiction" over claim brought pursuant to the TCA that defendant violated the TCA's duty to negotiate in good faith). *See also Intermedia Communications., Inc. v. Bellsouth Telecommunications., Inc.,* 173 F.Supp.2d 1282 (M.D. Fla. 2000) (sections 206 and 207 do not confer jurisdiction over plaintiff's claims alleging violations of the TCA including duty to negotiate in good faith).

4.  Jurisdiction under section 256(e)(6) of the TCA is lacking

Plaintiff must establish that jurisdiction herein exists under section 252(e)(6).  On October 5, 2004, the ACC ordered Plaintiff and the Citizens Defendants to "prepare and sign an interconnection agreement incorporating the terms of the Commission's [r]esolutions" and to submit same to the ACC.  (Defendant's Motion, Ex. A, p.17)   It is clear on the instant record that Plaintiff did not sign an interconnection agreement. Plaintiff and the Citizens Defendants did not submit an executed interconnection agreement as ordered  by the ACC for the ACC's approval or rejection.  Thus, the ACC has not issued a "determination" as contemplated under section 252(e)(6).

Notwithstanding the fact that Plaintiff has failed to comply with the ACC's order to submit a signed interconnection agreement, Plaintiff argues that it is not required "to take any further steps than those it has taken.  Autotel arbitrated its disputes with Citizens, and the ACC came out with an order." (Plaintiff's Response to the Citizens Defendants' Motion, p.8) According to Plaintiff, requiring it to take any further administrative action would result in

a request for a rehearing and such exhaustion is not required under the TCA. (Id. at pp. 9-11 (*citing AT&T Communications Sys. v. Pacific Bell,* 203 F.3d 1183 (9th Cir. 2000)).

The TCA specifically requires that "[a]ny interconnection agreement adopted by...arbitration shall be submitted for approval to the State commission." 47 U.S.C. § 252(e)(1). It is clear on the instant record that Plaintiff did not enter into such an agreement as evidenced by Plaintiff's failure to comply with the ACC's order requiring the parties to "prepare", "sign" and "submit" the interconnection agreement for the ACC's review. Obviously, the document submitted by the Citizens Defendants could not be considered an agreement among the parties as Plaintiff's refusal to sign the document clearly indicated that there was no agreement at all. "Section 252(e)(6)'s explicit language clearly...says that federal district courts should determine 'whether *the agreement*'... does or does not comply with the Act. It does not say that courts should determine 'whether agreements or orders regarding agreements' are in compliance with the Act." *GTE North,* 978 F. Supp. at 834. (emphasis in original) (distinguishing between *the final agreement* and interim agreements or orders regarding agreements)

Plaintiff also failed to argue before the ACC that the Citizens Defendants allegedly violated their duty to negotiate in good faith. The duty to negotiate in good faith is part of the statutory process over which the TCA grants initial authority to the state regulators. Review of Plaintiff's claim may impact the arbitration and approval processes and may also involve simultaneous examination of the terms of the proposed interconnection agreement–all of which are matters committed to the state commission in the first instance. Thus, under the instant facts, Plaintiff's claim against the Citizens Defendants is more appropriately raised before the ACC in the first instance.

Plaintiff's reliance on *AT&T Communications* for the premise that no further action was required on its behalf subsequent to the ACC's October 2004 order is unpersuasive. In *AT&T,* "as required by the [TCA], the parties submitted the arbitrated agreement to the [state commission] for approval." *AT&T Communications*, 203 F.3d at 1185. After the state

- 18 -

commission approved the agreement with certain modifications, AT&T filed suit in district court pursuant to section 252(e)(6). The issue in that case involved whether a state statute requiring parties to petition for rehearing with the commission before filing suit applied to federal court actions filed under the TCA. The Ninth Circuit held that the state exhaustion statute did not apply. Unlike *AT&T Communications*, the instant case does not involve the interaction of a state exhaustion statute and the TCA. Instead, the instant Plaintiff has failed to meet the express provisions of the TCA requiring presentation of the issues first to the state commission and submission of an interconnection agreement for approval. Without such action, the ACC cannot issue its determination as contemplated under section 252(e)(6).

On the facts herein, where no executed interconnection agreement has been submitted for the state commission's approval and where Plaintiff has failed to raise the issue regarding good faith negotiations with the state commission, jurisdiction pursuant to section 252(e)(6) over Plaintiff's first and second causes of action is lacking. *See Global-Naps,* 287 F.Supp.2d at 540 (holding that plaintiff must first present issue regarding good faith negotiations to the state commission and that "under section 252(e)(6), a federal court only has subject matter jurisdiction under the 1996 Act once a State commission makes a determination"); *See also* Citizens Defendants' Ex. E and F (containing district court decisions reaching same conclusion regarding Plaintiff and Plaintiff's affiliate on similar facts) and the Citizens Defendants' September 18, 2005 Notice of Supplemental Authority (citing April 14, 2006 order granting motion to dismiss good faith negotiation claim in *Autotel v. Qwest,* CV-327-TUC-JCG (D.Ariz. *filed* May 5, 2005)) Because the Court lacks subject matter jurisdiction, Defendants' other grounds for dismissal of Plaintiff's TCA claims need not be addressed.

B.  Plaintiff's claims filed pursuant to section 1983 against Defendant ACC and
     Defendant Commissioners

Defendant ACC and the Defendant Commissioners argue that Plaintiff's section 1983 claims are subject to dismissal for lack of jurisdiction because section 252 of the TCA "establishes a comprehensive enforcement scheme and private judicial remedy which are

intended to address any claims that a state commission's approval of an interconnection agreement fails to comply with sections 251 and 252." (Defendant ACC and Commissioner's Defendants' Motion, p.9)   Defendants also argue that such claims should be dismissed because Defendants are immune from suit; because the claims are barred by the Eleventh Amendment; and because Plaintiff has not suffered a deprivation of a federally protected right.

Section 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  It is well-settled that Plaintiff may avail itself of the remedy provided under section 1983 only if Congress has not foreclosed private enforcement of such rights, either expressly in the statute itself "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983." *Blessing v. Freestone,* 520 U.S. 329, 341 (1997).  To seek redress through section 1983, "the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs."  *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 120  (2005).  Further, such a showing creates "'only a rebuttable presumption that the right is enforceable under section 1983.'" *Id.* (*quoting Blessing,* 520 U.S. at 341).  The defendant may defeat this presumption by showing that Congress did not intend that remedy for a newly created right.  *Id.*  "[E]vidence of such congressional intent may be found directly in the statute creating the right or inferred by the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983.'" *Id.* (*quoting Blessing,* 520 U.S. at 341).

Defendant ACC and the Defendant Commissioners assert that because section 252 creates a comprehensive enforcement scheme for telecommunications companies attempting to interconnect with other carriers under the TCA, the TCA's provisions indicate that Congress intended to foreclose separate actions under section 1983.  (Defendant ACC and Defendants Commissioners' Motion, pp.8-9)

- 20 -

The Supreme Court has held that section 1983 could not be used to enforce 47 U.S.C. § 332(c)(7)(B)(v), a section of the Telecommunications Act of 1996 that is not at issue here but which Defendant ACC and Defendant Commissioners contend is similar to section 252. *Abrams,* 544 U.S. 113.  Section 332(c)(7) imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of facilities for wireless communications. *Id.* at 115.  The statute also provides in relevant part that persons adversely affected by any final action or failure to act by a state or local government, may within 30 days after the failure to act, commence an action in any court of competent jurisdiction. *Id.* at 116 (citing 47 U.S.C. § 332(c)(7)(B)(v))

The *Abrams* court recognized that "in *all* of the cases in which we have held that section 1983 is available for violation of a federal statute, we have emphasized that the statute at issue...*did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." *Id.* at 121 (emphasis in original). However, the Court made clear that "[t]he ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, section 1983." *Id.* at 122.  The Court found nothing in the section 332 to rebut the inference that a section 1983 action was precluded. *Id.*  The Court pointed out that the statute "adds no remedies to those available under section 1983, and limits relief in ways that section 1983 does not." *Id.*  The Court cited: (1) the statute's limits on judicial review of zoning decisions by requiring that such actions be commenced within thirty days after the governmental entity had taken final action and requiring that the court decide the matter on an expedited basis; (2) the fact that remedies under the statute for compensatory damages may be different from those available under section 1983; and (3) and the statute does not include attorney's fees and costs. *Id.*  *See also id.* at 128 (Breyer, J. concurring) (Section 1983 suits...differ considerably from ordinary review of agency action.  The former involve plenary judicial evaluation of asserted rights

- 21 -

deprivations; the latter involves deferential consideration of matters within an agency's expertise.")

Like the telecommunications statute at issue in *Abrams,* sections 251 and 252 provide a comprehensive remedial scheme to ensure the rapid de-monopolizaition of the telecommunications industry by promoting a streamlined and expedient process for the negotiation, mediation, arbitration, and approval of interconnection agreements. *See* discussion *supra* at p.10 (discussing in detail the TCA's provisions and timelines). While nothing in section 1983 requires a plaintiff to submit to an administrative process consisting of negotiation, and/or arbitration, and final agency approval before filing suit, the TCA requires that the parties first participate in such process before a state commission with expertise in such telecommunications matters prior to seeking district court review. *Id.*

The court's review of the state commission proceedings is not plenary.  The court may only consider whether the interconnection agreement satisfies the TCA.  The court's scope of review is confined to the administrative record and the court must afford the proper deference to the administrative determination. *See U.S. West Communications, Inc. v Jennings,* 304 F.3d 950, 958 (9th Cir. 2002) (federal courts "consider *de novo* whether the agreements comply with the Act and its implementing regulations and we consider all other issues under an arbitrary and capricious standard...The ACC's findings of fact are reviewed for substantial evidence.") *Pacific Bell,* 325 F.3d at 1131 ("Most courts have interpreted the arbitrary and capricious standard to grant broad deference to agency decisions....Thus, to prevail...[plaintiff] must show that [the commission's] order was not supported by substantial evidence..., or that the Commission made a clear error of judgment.");*MCI Telecommunications, Corp. v. GTE Northwest, Inc.,* 41 F.Supp.2d 1157, 1161 (D.Or. 1999) ("there is general agreement that review under section 252(e)(6) is confined to the administrative record.")

Permitting a plaintiff to allege a violation of the TCA pursuant to section 1983 would, without question, distort the comprehensive scheme of review  that Congress sought to

achieve with the TCA's enactment. *See Abrams,* 544 U.S. at 120 ("The crucial consideration is what Congress intended.") By crafting the comprehensive statutory review and remedial procedures contained in the TCA, Congress has manifested its intent that these procedures are exclusive. *See Id.* Moreover, where as here, the plaintiff's constitutional claims "equate violations of statutorily established procedural rights with violations of the Constitution," such claims lack "the independent constitutional basis necessary for a valid cause of action under section 1983." *Doe v. Maher,* 795 F.2d 787, 790 (9th Cir. 1986) (due process claim precluded). *See also Smith v. Robinson,* 468 U.S. 992 (1984) (equal protection claim precluded).[8]   Accordingly, section 252 of the TCA precludes a section 1983 action. Plaintiff's third and fourth causes of action should be dismissed.

## III.  RECOMMENDATION

For the foregoing reasons, the TCA is the exclusive avenue through which Plaintiff may pursue its claims in federal court.  Because the Court lacks subject matter jurisdiction under the TCA, the Magistrate Judge recommends that the District Court:

    (1)    grant the Citizens Defendants' Motion to Dismiss (Doc. No. 23) Plaintiff's second cause of action for lack of subject matter jurisdiction;

    (2)    grant Defendant ACC and Defendant Commissioners' Motion to Dismiss (Doc. No. 27) and dismiss the remainder of Plaintiff's Complaint for lack of subject matter jurisdiction.

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CV 05-328-TUC-JMR.**

---

[8]Although Congress subsequently amended the statute at issue in *Smith* and *Maher* to, in effect, legislatively overrule the holding in those cases with regard to the specific statute, the *Smith* court's section 1983 preclusion analysis remains valid. *See Blessing,* 520 U.S. at 347; *Abrams,* 544 U.S. at 113; *Bruneau v. South Kortright Central School Dist.,* 163 F.3d 749, 757-759 & n. 1 (6th Cir. 1998).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

The Clerk of Court is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 26th day of September, 2006.

Héctor C. Estrada
United States Magistrate Judge